*505 OPINION OF THE COURT
Matthew F. Cooper, J.
In this matrimonial action, the defendant wife moves for a change of venue from New York County to Suffolk County. The basis for her motion is that venue is improper in New York since she resides in Suffolk and the plaintiff husband resides in Queens. Although the motion was submitted without opposition and could be granted summarily on default, a more detailed examination is warranted as to the recurrent practice of bringing divorce actions in New York County regardless of where parties to the divorce actually live. As will be discussed, the practice poses significant problems for parties who have no connection to this county, particularly defendants who are unrepresented by counsel, as well as for the court system as a whole.
Manhattan: A Mecca for Matrimonial Matters
New York County has the dubious distinction of being the divorce capital of New York State. This does not mean, however, that the inhabitants of the island of Manhattan are somehow more prone to failed marriages. It means that a disproportionate number of the divorce actions brought in New York State, and in New York City in particular, are filed in New York County. The last census showed that only eight percent of the State’s population resides in Manhattan, but the matrimonial filing statistics for 2010, the latest year for which statewide filing figures are available, revealed that 23% of the divorce actions commenced in New York State were filed in New York County. Thus, just about one out of every four divorces that occurred in this State took place here.
Even more striking are the 2011 divorce filing statistics for the five counties that comprise New York City. In terms of population, New York County ranks a distant third to Kings County and Queens County, and only marginally ahead of Bronx County. Yet no other county came anywhere close to the 15,342 divorce actions, be it contested or uncontested, filed here last year. In fact, of all the divorces brought in New York City, an astounding 49.6% of them were commenced in New York County. In other words, one out of every two divorces commenced in this city of more than 8 million people ended up last year in a county that has a population of little more than 1.5 million.
*506 Why Manhattan?
What accounts for this glaring disconnect between the number of people who reside in Manhattan and the number of divorces filed here? The explanation, as it turns out, is strikingly clear: it has become the accepted practice for attorneys and nonattorney divorce processing services, the so-called divorce mills, to commence divorce proceedings in New York County despite the fact that neither spouse lives here. And although no official statistics track the number of cases falling into this category, any judge, special referee or clerk in this court who is involved in handling matrimonial matters knows that anywhere from 75 to 80% of the filings involve divorces where both spouses reside outside of New York County.
What is it about New York County that explains this penchant for filing divorce actions here as opposed to a county where at least one of the parties resides? That answer is not entirely clear. Perhaps it is because New York has a reputation for processing divorce actions, particularly uncontested divorces, more expeditiously than elsewhere. Perhaps it is because it is more convenient for attorneys and divorce mills who have their offices in Manhattan to file here. Or perhaps, and less benignly, it is because the chances of a party obtaining an uncontested divorce on default increase if the action is brought in a venue far removed from where the defendant actually lives. Whatever the reason may be, those who file divorces, whether legitimate matrimonial attorneys or the nonattorney divorce mills that skirt the edges of legality by preparing, serving and filing divorce papers on behalf of their “clients,” clearly perceive an advantage to filing in Manhattan.
The Instant Case and Defendant’s Motion to Change Venue to
Suffolk County
Background
This case presents a classic example of a New York County divorce in which neither party resides in New York County. Plaintiff husband lives in Kew Gardens, Queens County. Defendant wife lives in North Lindenhurst, Suffolk County. The parties have two minor children, both of whom reside with defendant in Suffolk County. There is no indication that the parties ever resided, worked or owned property in this county. Even the parties’ attorneys are without ties to New York County; plaintiff’s attorneys have their offices in Jackson Heights, Queens County and defendant’s attorney is located in Babylon, *507 Suffolk County. But despite the fact that not one aspect of the marriage or the parties’ lives is remotely connected to Manhattan, plaintiff nevertheless chose to file for divorce in New York County Supreme Court.
Plaintiff commenced this action for divorce in September 2011 by filing with the New York County Clerk and then serving on defendant a summons and verified complaint. The complaint alleges that the parties have lived separate and apart for more than one year pursuant to a valid separation agreement. After being served, defendant interposed a verified answer in which she asserts that the parties vitiated the separation agreement by residing together after its execution. Approximately two months later, defendant, pursuant to Civil Practice Law and Rules § 511 (a), served a demand to change venue from this county to defendant’s home county of Suffolk.[1] Having failed to receive a response to the demand, defendant subsequently made this motion for an order directing a change of venue from New York County to Suffolk County. The motion was submitted on default.
Because plaintiff did not submit opposition papers or otherwise appear to contest defendant’s motion to change venue, one can only speculate about why plaintiff chose to commence the case in this county in the first place. The convenience to plaintiff’s attorneys can immediately be ruled out, however, inasmuch as the firm has its offices in Queens, not Manhattan. What can also be ruled out — or at least should be able to be ruled out — is that plaintiff decided to file in New York County because it is somehow quicker or easier to get a divorce in Manhattan than it is in Queens or Suffolk. After all, the Supreme Courts of every county in this State are part of one Unified Court System, and as such they are required to follow uniform practices and procedures with regard to processing divorces. Theoretically, in a system where there are strict timetables governing the disposition of matrimonial cases (see 22 NYCRR 202.16 [f]), all counties should be on roughly the same schedule with respect to processing both contested and uncontested divorces. If anything, the fact that New York County has *508 such an increased inventory, handling as it does between three and four times more divorce cases each year than either Queens or Suffolk, might lead one to reasonably expect that it would take more time — not less — to get divorced here.
The last reason that might explain why plaintiff chose New York as the county in which to bring his divorce is the most probable, and at the same time the most troubling: plaintiff thought Manhattan’s greater distance from Suffolk County would increase the chances of his wife not appearing in the action. Plaintiff could therefore obtain a default judgment, which is an unfortunate — and all too frequent — result in out-of-county divorce actions. Such a result would serve to eliminate a challenge from defendant as to whether the parties vitiated the separation agreement, a challenge that could reopen such issues as support, maintenance and equitable distribution.
Fortunately for defendant, she had the wherewithal to retain an attorney to appear and file an answer in this court, thereby preventing plaintiff from obtaining a judgment on default. And fortunately for the court system, as well as for defendant, defendant’s attorney had the inclination to make a motion to change venue from New York to Suffolk so that the Supreme Court for defendant’s home county could be the court to hear the case. As will be discussed, it is generally preferable to have a divorce heard in the county in which at least one of the parties resides rather than in a foreign county far removed from the parties, their children and their lives.
CPLR 503 (a) Trumped by CPLR 509
At this point, one might question the legal basis for plaintiff to even file, let alone proceed with, a divorce action in a venue with absolutely no connection to the parties or the issues raised in their divorce. And at first glance, there would seem to be no basis for doing so. CPLR 503 (a), captioned “Venue based on residence,” provides, in pertinent part: “Except where otherwise prescribed by law, the place of trial shall be in the county in which one of the parties resided when it was commenced.” In matrimonial cases, it has been held that residency “must be determined at the time of commencement of the action” and a claim of residency must be demonstrated by showing a requisite “degree of permanence.” (Santulli v Santulli, 228 AD2d 247, 248 [1st Dept 1996] [plaintiffs renting of a room in Manhattan 16 days before commencement of the divorce action was insufficient to obtain residency in New York County when the parties had both resided on Staten Island].)
*509 Despite these well defined rules of engagement for civil actions, litigants in matrimonial actions have nevertheless been able to utilize CPLR 509 to bring cases in counties where neither party resides. CPLR 509 states in its entirety: “Notwithstanding any provision of this article, the place of trial of an action shall be in the county designated by the plaintiff, unless the place of trial is changed to another county by order or upon motion, or by consent as provided in subdivision (b) of rule 511.” In this case, as with so many other matrimonial actions filed here, plaintiff invoked CPLR 509 to file his divorce in New York County rather than bring it in a county where either he or defendant resides.
CPLR 509 in Turn Trumped by CPLR 510
A plaintiffs right under CPLR 509 to designate a county of his or her own choosing as the situs of the lawsuit, despite that county not being either party’s county of residence, is not absolute. CPLR 509 itself provides that a plaintiffs designation of a county stands “unless the place of trial is changed to another county by order upon motion.” Moreover, CPLR 510 provides a means by which a defendant can challenge that designation and have venue changed from the foreign county to the home county of one of the parties. Subdivision (1) of CPLR 510 states that “[t]he court, upon motion, may change the place of trial of an action where . . . the county designated for that purpose is not a proper county.”
In this case, defendant has moved to change venue on the ground that designating New York County as the place for trial of this matter is improper under CPLR 503 (a) since neither defendant nor plaintiff resides here.[2] By moving to change venue, defendant has thus been able to invoke the power of CPLR 510. This in turn overrides the statutory right that plaintiff had initially under CPLR 509 to bypass CPLR 503 (a) and to file the divorce in any county of his choosing, including New York County.
Defendant’s Motion Granted and Venue Changed
Based on the undisputed facts that plaintiff resides in Queens County and defendant resides in Suffolk County, it must be concluded that New York County is not the proper county for this case to be heard. This is so even though plaintiff had the *510 right in the first instance under CPLR 509 to designate New York County as the place of trial and file the divorce action here. The only two counties where venue is proper under CPLR 503 (a) are Suffolk and Queens. Having moved to change venue to Suffolk County, defendant is entitled under CPLR 510 (1), either as a matter of right or in the court’s discretion (see Accardi, 82 AD3d 803), to such a change. Accordingly, her motion will be granted and the clerk directed to transfer the case to Suffolk County Supreme Court so the divorce can be heard there.
The Continuing Filing Problem
Having determined that the instant divorce action should be heard in Suffolk County instead of here, the court will now proceed to discuss the wider implications of the practice of the unfettered filing of divorce actions in New York County. As stated previously, bringing divorces in this County without regard to where the parties reside gives rise to a host of problems.
One of these problems is the practice’s effect on case load and calendar control in this court. Because judges, special referees and court staff are called upon to deal with a veritable tsunami of divorce filings for people who live in every borough in this City and every county in this State, precious time is taken from cases involving people who actually live in New York County. And even though the large majority of these out-of-county cases are uncontested divorces submitted on papers alone, the work attendant to each one is nevertheless considerable. The cases, often filed en masse by the divorce mills, must first be reviewed by over-burdened matrimonial clerks, who also must do the time-consuming chore of conducting the domestic violence and sex offender registry checks required under Domestic Relations Law § 240 (1) (a-1). After that, the files are sent by the cartload to chambers. There the papers must again be scrutinized, determinations made as to whether the divorce and ancillary relief can be granted, registry “hits” considered and acted upon as appropriate, and then, if the papers pass muster, the laborious task undertaken of signing, dating and stamping each finding of facts and conclusions of law and each judgment of divorce. Throughout this process, the matrimonial clerks’ office and judges’ chambers are barraged with calls from practitioners in Rockland County, divorce mills in Queens and individual litigants in Nassau demanding to know when their divorces will be signed.
*511 Although this situation poses considerable difficulties for the court system, they pale in comparison to the negative consequences it can have for the litigants themselves. These consequences take on numerous forms and dimensions. One has already been mentioned: the increased chances of a defendant living in a foreign county not being able to respond to the divorce summons and as a result defaulting in the action. A good portion of the postjudgment matrimonial motions heard in this County are those brought by out-of-county defendants seeking to vacate default judgments. During the three years I sat in a postjudgment matrimonial part, I rarely encountered a motion to vacate a default judgment entered in a case where one of the parties resided in this County. On an almost daily basis, however, I entertained motions to vacate defaults in cases where neither party lived in or had any connection to New York County. One can only wonder how many other defaults remain unopened simply because defendants lack the resources to obtain counsel or the ability to come to Manhattan to make a pro se motion to vacate the default judgment.
Yet another negative byproduct of the file-in-Manhattan syndrome is that despite this County’s fleeting connection to the parties, New York County has — or at least is perceived by other courts to have — continuing jurisdiction over subsequent issues stemming from the marriage simply because the divorce judgment was entered here. This is so even if the judgment was granted on default. Thus, if a New York County judgment contains a child support or visitation provision and at some time, especially soon after the divorce, a party seeks to modify or enforce that provision, the Family Court or Supreme Court in the county where the party resides will often direct the party to return to New York County because that is where the judgment was entered. This, of course, places a heavy burden on the litigant, particularly those of limited means who cannot afford a lawyer and must face the daunting task of traveling to Manhattan to file a motion alone.
Even where the default divorce judgment is vacated or where a non-New York County defendant does not default, problems arise that negatively impact parties and their children. If a motion to change venue is not made — and this case represents one of those rare instances where such a motion was made — then the divorce remains in Manhattan. As a result, New York County judges are called upon to make decisions concerning custody, parental access, schooling, medical care, and the like *512 for children who live in other counties and have neither parent living in Manhattan. One of the distinct benefits of sitting in a particular county for any length of time is that judges become familiar with things like schools, neighborhoods, health care facilities and travel times. That benefit is lost when a judge is dealing with other counties and unfamiliar terrain.
In addition to having judges contend with weighty decisions about places and institutions with which they are largely unfamiliar, an out-of-county divorce venued in New York County may result in increased financial and emotional strains on litigants and their families. If testimony is necessary concerning the value of the marital residence in some distant suburb, an added expense is incurred for the appraiser’s travel time to Manhattan. And where custody or visitation is an issue, the children may be forced to make repeated trips to Manhattan so that they can meet with the attorney appointed to represent them and the forensic psychologist appointed to evaluate them. Clearly, children should not be put in this position just because it was thought advantageous for their parents’ divorce to be brought in Manhattan.
Conclusion
It is hard to imagine that when the Legislature enacted CPLR 509 in 1962 it envisioned the provision resulting in the situation described here. There are many good and appropriate uses by plaintiffs of the right in the first instance to designate venue pursuant to CPLR 509, but giving divorce mills and others carte blanche to deluge New York County with out-of-county divorces is not one of them. As should be apparent, such a practice is not good for the courts, the litigants and the litigants’ children.
What is particularly frustrating about the situation is that there is nothing an individual judge can do about it. There exists no court rule or statute which permits the court to sua sponte transfer a case to a proper venue based on the parties’ lack of residence. (See e.g. Iglesia v Iglesia, 292 AD2d 424, 425 [2d Dept 2002].) To the contrary, CPLR 510 requires that a defendant seek such a transfer by motion. Because so many of these divorces are submitted on default and so many of the defendants are unrepresented, the chances of the appropriate motion being made are minimal. And if a trial court has the temerity to order a change of venue absent a motion, that order will be promptly reversed. (See e.g. Matter of Travelers Indem. Co. of Ill. v Nnamani, 286 AD2d 769 [2d Dept 2001].)
*513 The remedy for the situation must then lie with the Legislature. The Legislature can amend the CPLR to require plaintiffs in divorce actions to file in a county where at least one of the parties lives, unless special circumstances are shown.[3] Or else it can give trial judges the discretion to sua sponte transfer cases that do not belong in the county where they were filed. Short of legislative action, perhaps the court system as an interim measure can implement a rule that curbs the mass-filing practices of the divorce mills. Until something is done, it appears the practice will only grow, the numbers in New York County will only climb, and the consequences for litigants will only worsen.
In light of the foregoing, it is hereby ordered that defendant’s motion for a change of venue to Suffolk County is granted.

. In making the demand on plaintiff that venue be changed, defendant failed to strictly comply with the requirement set forth in CPLR 511 (a) that the demand be served “with the answer or before the answer is served.” Despite any untimeliness in defendant serving the demand, the court nevertheless retains the discretion to consider a motion to change venue when the county designated by plaintiff is not the proper county. (See Accardi v Kaufmann, 82 AD3d 803 [2d Dept 2011].)

. Although defendant’s motion states that it is brought pursuant to CPLR 511 (b), a motion to change venue based on the designation of an improper county is actually authorized by CPLR 510 (1).

. Such a modification would be in the same vein as CPLR 503 (f) and CPLR 513. The former requires consumer credit transactions to be brought either in the county where the defendant resides or the county where the transaction took place. The latter authorizes the clerk to refuse to accept a consumer credit transaction summons for filing if it appears that venue is improper in that county.